UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAULA GROSSNICKLE for I.R.G.,  :        Civil No. 1:20-CV-00375
a minor,                        :
              Plaintiff,       :
                                :        (Magistrate Judge Schwab)
     v.                        :
                                :
KILOLO KIJAKAZI, Acting         :
Commissioner of Social Security,[1] :
                                :
             Defendant.       :

## MEMORANDUM OPINION

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Paula Grossnickle ("Grossnickle") on behalf of her minor son, I.R.G.

("I.R.G.")  seeks judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") denying her claim for Supplemental Security

Income ("SSI").  We have jurisdiction over the case pursuant to 42 U.S.C.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is
automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d)
(providing that when a public officer sued in his or her official capacity ceases to
hold office while the action is pending, "[t]he officer's successor is automatically
substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance
with this subsection shall survive notwithstanding any change in the person
occupying the office of Commissioner of Social Security or any vacancy in such
office.").

§§ 405(g) and 1383(c)(3).  Because the Commissioner's decision is supported by substantial evidence, the court will affirm the Commissioner's decision.

## II. Procedural History.

We refer to the transcript provided by the Commissioner.  *See docs. 9-1* to *9-12*.[2]  On September 15, 2016, Grossnickle protectively applied[3] for SSI on behalf of her minor son I.R.G., alleging that he had been disabled since May 4, 2015. *Admin Tr.* at 23.  The Social Security Administration denied Grossnickle's claim initially on February 15, 2017. *Id.*  Following the initial denial of Grossnickle's claim, the case went before Administrative Law Judge Richard Zack ("ALJ"), who concluded that I.R.G., represented by counsel, was not disabled and denied his benefits on that basis on December 14, 2018. *Id.* at 20-43.  Grossnickle requested a review of the ALJ's decision before the Social Security Administration's Appeals Council, which denied her request for review on January 10, 2020. *Id.* at 1-6.

---

[2] The facts of this case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Grossnickle's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

Grossnickle filed a complaint with this court on March 4, 2020, seeking judicial review of the Commissioner's final decision to deny benefits. *Doc. 1*. On June 26, 2020, the Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 8-9*. Grossnickle filed a brief in support of her complaint. *Doc. 12*. The Commissioner filed a brief in opposition on September 24, 2020. *Doc. 15*. The matter is ripe for adjudication.

## III.   Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether I.R.G. is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ in Evaluating Title XVI Childhood Disability Claims.

To receive SSI pursuant to Title XVI of the Social Security Act, a claimant under the age of 18 ("child") must demonstrate that he or she has "a medically determinable physical or mental impairment, which results in marked and severe

functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906. The ALJ follows a three-step sequential-evaluation process to determine whether a child claimant is disabled. *See* 20 C.F.R. § 416.924. Under this process, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has an impairment or combination of impairments that is severe; and (3) if so, whether the child's severe impairment (or combination of impairments) meets, medically equals, or functionally equals one of the disability listings. *Id.*

If the analysis proceeds to step three, the ALJ must determine whether a child's impairment(s) meets, medically equals, or functionally equals a disability listing. *Id.* An impairment meets or medically equals a listed impairment if the impairment, or combination of impairments, and its symptoms are equal in severity and duration to the criteria of any listed impairment. *Id.* § 416.926(a); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

If a child's impairment, or combination of impairments, does not meet or medically equal a listing, the ALJ will decide whether the impairment results in limitations that are functionally equivalent to a listed impairment. 20 C.F.R.

4

§ 416.926a(a).  Whether a child's impairment functionally equals a disability listing is analyzed in terms of six functional domains. *Id.* § 416.926a(b).  "These domains are broad areas of functioning intended to capture all of what a child can or cannot do." *Id.* § 416.926a(b)(1).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical wellbeing. *Id.*  When determining whether an impairment is functionally equivalent to a listing, the ALJ considers the effects of all the child's impairments, including those impairments that the ALJ does not identify as severe at step two of the analysis. *Id.* § 416.926a(a).

An impairment is functionally equivalent to a disability listing if it results in a "marked" limitation in two domains or an "extreme" limitation in one domain. *Id.*  A "marked" limitation is one that seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "'[m]arked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.*  An "extreme" limitation is one that very seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).  An "'[e]xtreme' limitation also means a limitation that is "'more than marked.'" *Id.*

5

The ALJ uses a "whole child" approach in determining whether an impairment is functionally equivalent to a listing. *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule—the "Whole Child" Approach*, SSR 09-1p, 2009 WL 396031 (Feb. 17, 2009). Under this approach, the ALJ begins "by considering the child's functioning without considering the domains or individual impairments." *Id.* at 1.  After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id.* at 2.  An impairment "may have effects in more than one domain" and limitations caused by an impairment must be evaluated "in any affected domain(s)." *Id.* (quoting *Id.* § 416.926a(c)).  Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id.*  "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id.*

Additionally, the ALJ's disability determination must meet certain basic substantive requirements.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests.  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision

which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision Denying Grossnickle's Claim.

At the time Grossnickle filed her application for I.R.G.'s childhood disability under Title XVI of the Social Security Act, I.R.G. was 5 years old. *Admin. Tr.* at 26. Therefore, I.R.G.'s age fell within the "preschooler" age group at the time of filing. *Id.* Prior to the date of the hearing, I.R.G. changed age categories and fell into the "school-age child" age range, where he remained as of the date of the hearing. *Id.*

On December 14, 2018, the ALJ issued a decision denying I.R.G. benefits. *Id.* at 20. At step one of the three-step sequential-evaluation process used in childhood disability claims, the ALJ found that I.R.G. had not engaged in substantial gainful activity since September 15, 2016, the date the application was filed. *Id.* at 26. At step two, the ALJ found that I.R.G. had the severe impairments

of attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder

("ODD"), hypertension, and bladder mass. *Id.* Additionally, the ALJ found that

learning disorder and autism spectrum were not medically determinable

impairments even though the record refers to them as a diagnosis. *Id.*

At step three, the ALJ found that none of I.R.G.'s impairments met, or

medically equaled the severity of one of the impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1. *Id.* at 27. The ALJ specifically considered listings

112.08 for I.R.G.'s oppositional defiant disorder and 112.11 for I.R.G.'s ADHD.

*Id.* In making this determination, the ALJ considered Grossnickle's testimony. *Id.*

at 28. Specifically, the ALJ considered Grossnickle's testimony that I.R.G. suffers

from dyslexia, ADHD, anger issues, and separation anxiety. *Id.* at 28. The ALJ

considered Grossnickle's allegations that I.R.G. has difficulty with

communication, understanding, interacting with others, managing personal needs,

paying attention, and sticking with a task. *Id.* The ALJ noted Grossnickle's

testimony that I.R.G. is in the second grade but not performing on grade level, that

I.R.G. has a support teacher and is being evaluated for an Individualized Education

Plan ("IEP"), and that I.R.G. struggles with homework and learning math. *Id.* The

ALJ considered Grossnickle's testimony that I.R.G. is very defiant and will act out

when he does not get his way, often pinches himself, hits himself, and picks at his

skin. *Id.* The ALJ also considered Grossnickle's testimony that she had to restrain

I.R.G. at times to calm him and that he has run out of the house when he was mad. *Id*.  I.R.G. was present at the hearing and interrupted the hearing on several occasions, but he did not testify. *Id*. at 52, 52, 57, 58, 59, 60.

The ALJ found that I.R.G.'s medically determinable impairments reasonably could be expected to produce the alleged symptoms. *Id.* at 28.  Per the ALJ however, "the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision." *Id.* at 29.

In addition to Grossnickle's testimony, the ALJ considered I.R.G.'s education and treatment records.  The ALJ noted that I.R.G. experienced problems focusing as a pre-schooler and was in the Head Start program, where he was doing well initially except for putting his hands in his mouth. *Id*.  The ALJ also considered that while in the Head Start program, I.R.G. began pushing limits and exhibiting signs of ADHD and would leave home and go to his aunt's house. *Id*. The ALJ further considered that I.R.G. was referred for outpatient therapy and began receiving psychiatric treatment. *Id*.  The ALJ further considered that initially, I.R.G. did not have a linear thought process, but this improved with medication. *Id*.

Additionally, the ALJ considered that in January of 2017, I.R.G. was evaluated by a neurologist who concurred with the ADHD diagnosis but did not

9

diagnose any neurological disorder. *Id*.   Further, the ALJ noted that in January

2017, I.R.G.'s treatment records indicated that he did not have an IEP or 504(c)

plan. *Id.*  The ALJ also considered that mental health records showed an increase

in symptoms, but this was handled with medication. *Id.*  The ALJ considered that

I.R.G. was working on his negative behavior and impulse control; that he was

having trouble staying on task; and that I.R.G.'s doctor noted that I.R.G. was

cooperative and with a linear thought process but that he interrupted his mother

and the doctor. *Id*.  The ALJ further considered that I.R.G.'s medication was

increased in December of 2017 when he had an increase in restless behavior and

was picking at his skin. *Id*.

During the 2016-2017 school year, I.R.G. was in kindergarten at the

Hepburn Lycoming Primary School. *Id*. at 163.  I.R.G.'s kindergarten teacher, Ms.

Pamela Nolan ("Ms. Nolan"), completed a teacher questionnaire in January of

2017. *Id*. at 163-170.  The ALJ considered Ms. Nolan's statement that I.R.G. was

below grade level in reading, language, and math; and had obvious to serious

problems in the domain of acquiring and using information, and in the domain of

attending and completing tasks. *Id*. at 31.  The ALJ further considered that Ms.

Nolan stated that I.R.G. had a slight problem in the domains of interacting and

relating with others, had no problems in the domain of moving about and

manipulating objects, and had no problem with the domain of caring for himself,

other than an occasional problem with hygiene. *Id.* The ALJ gave partial weight to Ms. Nolan's opinions, reasoning that the portion of the questionnaire which dealt with the domain of acquiring and using information, and the domain of attending and completing tasks was not well supported by the evidence and therefore given limited weight. *Id.* The ALJ specifically gave limited weight to the portion of Ms. Nolan's opinion which stated that I.R.G. had serious impairment in the domains of acquiring and using information and attending and completing tasks, as discussed above, but gave significant weight to the portion that opined I.R.G. had no limitations or mild limitations in the remaining domains. *Id.*

The ALJ considered the consultative examination of Andrew Cole, Ph.D. ("Dr. Cole"), performed in February of 2018. *Id.* at 29-30. The ALJ noted that Dr. Cole found I.R.G. to be uncooperative, impulsive, and hyperactive; and found I.R.G. to exhibit impaired attention, concentration, insight, and judgment. *Id.* at 29. The ALJ considered that Dr. Cole found I.R.G. adequately groomed with adequate eye contact, a euthymic mood, intact recent, and remote memory as well as a goal-directed thought process. *Id.* The ALJ considered that Dr. Cole found an imbalance in I.R.G.'s relationship with his mother and recommended parent training and family therapy. *Id.* The ALJ further considered that Dr. Cole diagnosed I.R.G. with ADHD and ODD and indicated that I.R.G. had delays in the domain of acquiring and using information and the domain of completing and

attending tasks and that I.R.G. had problems interacting and relating to others and in coping at an age-appropriate level. *Id*. at 29-30.  The ALJ gave partial weight to Dr. Cole's opinions, reasoning that Dr. Cole assessed I.R.G. at a time when his doctors were noting an increase in his symptoms, which were later addressed with medication. *Id*. at 30.  The ALJ reasoned further that Dr. Cole did not opine as to marked limitations and that examination revealed normal thought processes, memory, and mood. *Id*.

The ALJ next considered the letter submitted by I.R.G.'s psychiatrist, Ronald L. Pope, D.O. ("Dr. Pope"), of Diakon Family Life Services, which stated that I.R.G. was treated for learning disability and behavioral concerns. *Id*.  The ALJ considered further that attached to Dr. Pope's letter was a questionnaire completed by I.R.G.'s mother and an ADHD symptom checklist completed by I.R.G.'s therapist, Sylvia Beneire, MS, which stated that I.R.G. displayed symptoms of ADHD most of the time, and in many areas. *Id*.  The ALJ assigned Dr. Pope's letter little weight, reasoning that it was not supported by the attached questionnaires and that it was not consistent with the record, which indicated conservative treatment and management of symptoms with medication adjustments. *Id*.

The ALJ considered the opinion of the State agency consultant, William Anzalone, Ph.D., ("Dr. Anzalone") of February 2017, which found that I.R.G. had

12

a less than marked limitation in all domains, but for the domain of moving about and manipulating objects, in which he had no limitation. *Id*. at 31-32.  The ALJ gave Dr. Anzlaone's opinions significant weight, reasoning that it was supported by the record both before and after Dr. Anzalone's opinion. *Id*. at 32.

The ALJ also evaluated whether I.R.G.'s limitations were functionally equivalent to the listings. *Id.* at 32-39.  In evaluating the six domains, the ALJ found that, during the period relevant to his childhood-disability application, I.R.G. had: less than marked limitations in acquiring and using information; less than marked limitations in attending and completing tasks; less than marked limitations in interacting and relating with others; no limitation in moving about and manipulating objects; less than marked limitations in the ability to care for himself; and less than marked limitations in health and physical well-being. *Id.*  Based on these findings, the ALJ found that I.R.G. was not disabled, as defined by the Social Security Act. *Id.* at 39-40.

## V.   Discussion.

On appeal, Grossnickle presents a meandering argument that challenges the ALJ's decision under a descriptive heading that the ALJ failed to assess whether the minor child had a condition at the extreme level that would satisfy the "B criteria" listings. *Doc. 12* at 4.  The Commissioner acknowledges that the ALJ

failed to adequately explain his reasoning in finding that I.R.G. did not have an extreme limitation that would satisfy the B criteria, such that this court could conduct a meaningful review. *Doc. 15* at 14-16.  Additionally, the Commissioner acknowledges that interspersed in Grossnickle's argument, regarding the "B criteria" of the listings, is a separate contention that the ALJ improperly weighed opinion evidence and erred in giving greater weight to the opinions of the State agency analyst. *Id*. at 22.

Because the Commissioner has seemingly raised two arguments beyond the one articulated in Grossnickle's description, we will address all three arguments *seriatim*.  As stated more fully below, we find that the ALJ adequately articulated his reasoning for finding that I.R.G. did not meet the "B" Criteria and did not err in weighing the medical opinions.

### A. The ALJ properly articulated his reasoning that I.R.G. did not meet the "B" criteria.

Grossnickle argues that the ALJ, in his review of Listings 112.11 and 112.08, simply stated that the record did not show that I.R.G. had marked limitations in two of the areas of function addressed. *Doc. 12* at 4.  Grossnickle notes that the areas of function are age-appropriate cognitive/communication function; age-appropriate social functioning; age-appropriate personal functioning; or marked difficulties in maintaining concentration, persistence, or pace. *Id*. Specifically, Grossnickle notes the ALJ's language:

14

> However, for reasons discussed more fully below, the record
> does not show that the Claimant's limitations result in two
> (marked) limitations in the areas of age-appropriate
> cognitive/communication function, age-appropriate social
> functioning, age-appropriate personal functioning or marked
> difficulties in maintaining concentration, persistence or pace.

*Doc.* 12 at 4, citing *Admin. Tr.* at 27.

The Commissioner counter-argues that although the ALJ stated his conclusion in a single paragraph, he subsequently provided a thorough enough discussion from which the court could conduct a meaningful review. *Doc.* 15 at 15. The Commissioner argues that the "B" criteria set forth under Listings 112.08 and 112.11 directly overlap with the evidence and limitations relevant to the six functional domains. *Id.*

Here we find that the Commissioner's argument prevails.

The "B" Criteria for Listing 112.08 and 112.11 is identical. The "B" Criteria set forth is:

> Extreme limitation of one, or marked limitation of two, of the following
> areas of mental functioning (*see* 112.00F):
> 1. Understand, remember, or apply information (*see* 112.00E1).
> 2. Interact with others (*see* 112.00E2).
> 3. Concentrate, persist or maintain pace (*see* 112.00E3).
> 4. Adapt or manage oneself (*see* 112.00E4).

20 C.F.R. Part 404, Subpart P, Appendix I, Listing 112.08, Listing 112.11

At 20 C.F.R. Part 404, Subpart P, Appendix I, Listing 112.00F(2), the listing addresses functional equivalence, stating:

15

*Degrees of limitation.*  We evaluate the effects of your mental disorder on each of the four areas of mental functioning.   To satisfy the paragraph B criteria, your mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning.  See §§ 416.925(b)(2)(ii) and 416.926a(e) of this chapter for the definitions of the terms marked and extreme as they apply to children.

Notably, 20 C.F.R. § 416.925(b)(2)(ii) provides:

(ii) Although the severity criteria in part B of the listings are expressed in different ways for different impairments, 'listing-level severity' generally means the level of severity described in § 416.926a(a); that is, 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain. (See § 416.926a(e) for the definitions of the terms *marked* and *extreme* as they apply to children.) Therefore, in general, a child's impairment(s) is of 'listing-level severity' if it causes marked limitations in two domains of functioning or an extreme limitation in one. However, when we decide whether your impairment(s) meets the requirements of a listing, we will decide that your impairment is of 'listing-level severity' even if it does not result in marked limitations in two domains of functioning, or an extreme limitation in one, if the listing that we apply does not require such limitations to establish that an impairment(s) is disabling.

Most importantly, 20 C.F.R. 416.926a is noted at its heading to address

"Functional equivalence for children."  It provides at subsection (e):

*How we define 'marked' and 'extreme' limitations*—(1) *General.* (i) When we decide whether you have a "marked" or an 'extreme' limitation, we will consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects. We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your

> functioning from your parents, teachers, and other people who
> know you, and the relevant factors explained in §§ 416.924a,
> 416.924b, and 416.929.

The regulation set forth for "Functional equivalence for children" is the standard used to evaluate whether a child has a marked or extreme limitation in one of the six domains.  Based on the provisions of the listings and the regulations they reference as a whole; the Commissioner is correct in his assertion.  The evidence relevant to the "B" Criteria set forth at Listings 112.08 and 112.11 directly overlaps with the evidence relevant to the six domains.

Addressing each of the four categories set forth under the "B" criteria, we find a corresponding category with the six domains.  We address each in order and find that the ALJ articulated his reasoning for finding that I.R.G. had a less than marked limitation in each.

Concerning the criteria of "understanding, applying and using information" in an age-appropriate manner, we find that the ALJ properly addressed the domain of "acquiring and using information." *Admin. Tr.* at 32-33.  The ALJ gave a detailed analysis of the evidence, including I.R.G.'s school records, the teacher questionnaire, and Grossnickle's testimony. *Id*.

In finding that I.R.G. did not have a marked impairment in the domain of acquiring and using information, the ALJ reasoned:

> The claimant's mother has alleged that the claimant has problems
> in this area, is below grade level, and has a learning support

17

worker and small groups for reading.  However, the record does not show intelligence testing, testing for a learning disorder, or evidence of the claimant's actual performance in school.  The claimant's mother testified the claimant was in the process of being evaluated for an IEP, but there is no indication this is not for his behavioral issues rather than learning issues.  The teacher questionnaire is from two grades ago and indicates significant problems in this area, but the explanation indicates they are primarily related to the claimant's problems with attention and focus.

*Id.* at 33.

The ALJ reasoned that "while the record does clearly show the claimant's impairments have caused some level of limitation in this area, there is not sufficient evidence to support the finding of a marked limitation." *Id*. at 33.

Concerning the issue of "interacting with others", the ALJ addressed I.R.G.'s functional equivalence in the domain of "Interacting and Relating with Others."  *Id*. at 35-36.  The ALJ found a less than marked impairment in this domain, after providing a detailed analysis of the evidence, including Grossnickle's testimony, the teacher's question and the opinions of the consultative examiner. *Id*.  The ALJ concluded that "[i]n sum, the record does support some limitation in this area, but the objective findings and symptomology of record would not be consistent with a marked level of impairment." *Id*. at 36.

With regard to I.R.G.'s limitations in attention, persistence, and pace, the ALJ addressed his functional equivalence in the domain of attending and completing tasks. *Id*. at 33-34.  The ALJ addressed the relevant evidence, including

the medical records, the educational records, and the questionnaire completed by

I.R.G.'s kindergarten teacher. *Id*.

The ALJ noted:

> The teacher questionnaire has also identified this as being an area
> of impairment. However, the treatment records do not document
> a specific level of deficit in this area and show that at times the
> claimant showed improvement with medication adjustments.
> Similarly, the treatment plans indicate the claimant was
> continuing to learn coping mechanisms for impulsive behavior.
> Treatment records from April 2018 also indicate the claimant
> was happy and cooperative with normal speech, congruent affect
> and goal-directed thought process (Exhibit 10F). In sum, the
> record is showing some deficits on clinical examination.
> However, the claimant is receiving appropriate treatment and has
> noted times with improved symptomology.

*Id*. at 34.

After considering the evidence, the ALJ held that there was a less than

marked limitation in this area, reasoning that "there is not sufficient evidence to

show a marked level of limitation." *Id*.

With regard to the degree of limitation in the category of adapt or manage

oneself, the ALJ considered I.R.G.'s functional limitations in the domain of

"Caring for Yourself." *Id*. at 37-38. After considering the treatment records,

Grossnickle's testimony, and the findings of the consultative examiner, the ALJ

found that I.R.G. had a less than marked limitation in this domain. *Id*. The ALJ

reasoned that:

19

> In sum, balancing out the level of impairments in this area, the
> record does show the claimant has some level of deficit in this
> area, primarily in terms of his interaction with his mother, but
> the objective evidence does not support a level of deficit in the
> school setting and with others that would support a finding of a
> marked level of limitation.

*Id*. at 38.

Thus, we find that the ALJ did address the level of function which I.R.G.

had as to the four categories outlined in the "B" criteria of Listing 112.08 and

Listing 112.11.

While Grossnickle argues that the ALJ erred in not stating whether there was

an extreme limitation as to I.R.G.'s level of functioning in any of those categories,

we find Grossnickle's argument semantical.  Because the ALJ found that the

limitations did not reach the level of a marked impairment, it was implicit that they

would not reach a higher level of an "extreme" limitation.  Thus, the ALJ's failure

to explicitly make that finding can only be viewed as a harmless error.

While the ALJ is not required "to use particular language or adhere to

a particular format in conducting his analysis," *Jones v. Barnhart*, 364 F.3d 501, 505

(3d Cir. 2004), the ALJ must discuss the evidence and explain his reasoning

sufficiently "to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577

F.3d 500, 504 (3d Cir. 2009); *Milevoi o/b/o M.E.M. v. Saul*, No. 1:18-CV-02220,

2019 WL 6999715, at *6 (M.D. Pa. Dec. 4, 2019), *report and recommendation

adopted*, No. 1:18-CV-02220, 2019 WL 6910687 (M.D. Pa. Dec. 19, 2019).  Here,

we find that the ALJ properly articulated his findings to the extent that would allow reasonable review.

**B. The ALJ did not err in weighing the medical opinions.**

Grossnickle argues that the ALJ erred by giving significant weight to the opinion of non-examining state agency consultant Dr. Anzalone and in giving partial weight to the opinions of examining consultant Dr. Cole. *Doc*. *12* at 5-6. Additionally, Grossnickle alleges that the ALJ erred in failing to give greater weight to the opinions of the treating psychiatrist, Dr. Pope. *Id*. at 6-7. Because we have already found that the ALJ adequately explained his reasoning in finding that I.R.G. had a less than marked limitation in the domains of acquiring and using information and in attending and completing tasks, we will briefly address these arguments.

The Court of Appeals has ruled that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. *Id.* § 404.1527(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational

basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). However, a "treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429). Further, an ALJ cannot disregard a medical opinion "based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of the claimant's credibility.'" *Id.* at 318 (internal alterations omitted) (citing *Kent v. Schweiker*, 710 F.3d 110, 115 (3d Cir. 1983).

Guided by these legal tenets, the court concludes that substantial evidence does support the ALJ's consideration of the medical opinions in this matter.

### i.      The ALJ properly afforded no weight to Dr. Pope's opinion.

Grossnickle argues that Dr. Pope's statements should have been given great weight because he is a treating source.  The Commissioner counters that the ALJ was not required to give any particular weight to Dr. Pope's statement that I.R.G. is disabled because it does not constitute a medical opinion under the Act. *Doc. 15* at 24.  Indeed, we agree with the Commissioner as to this point.

Dr. Pope's letter opines only that I.R.G. should be awarded Social Security benefits.  While it then invites the reader to request additional information regarding I.R.G.'s limitations, it fails to state any functional limitations. *Admin. Tr.* at 283. Insofar as Dr. Pope has made a conclusory statement that I.R.G. is disabled, he has simply made a statement as to an issue that is reserved to the Commissioner. 20 C.F.R. § 416.927. The Commissioner correctly asserts that according to the regulations, the ALJ was under no obligation to give any weight to Dr. Pope's statement.

### ii.      The ALJ did not err in weighing Dr. Cole's opinion.

Grossnickle argues that the ALJ erred in affording the opinions of non-examining source Dr. Anzalone greater weight than those of examining source Dr. Cole.  In response, the Commissioner argues that the ALJ gave less weight to Dr. Cole's opinion because Dr. Cole did not opine to I.R.G.'s functional limitations in any of the domains. *Doc. 15* at 26.

23

We find again that the Commissioner has the prevailing argument.  We agree with the Commissioner that Dr. Cole's opinion was vague and did not specifically address I.R.G.'s level of function in any of the six domains. *Doc. 15* at 25.  The ALJ was correct that Dr. Cole did not specifically render an opinion as to the level of I.R.G.'s impairment in any of the six domains. *Admin. Tr.* at 275-281.

Having considered the opinion as a whole and having considered the fact that Dr. Cole found there to be delays in the domains of attending and completing tasks, and acquiring and using information, the ALJ gave Dr. Cole's opinion partial weight. *Id*. at 29-30. In making the determination, the ALJ found it significant that Dr. Cole did not opine as to a marked level of limitation in any of the domains. *Id*.

As we have noted, it is axiomatic that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v Comm. of Soc. Sec.*, 642 F.2d at 704.  Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck*, 181 F.3d at 433.

Again, we find that the ALJ has sufficiently articulated his reasoning in making this determination and has indicated that evidence which he has rejected and that which he has accepted.  Thus, we find that the ALJ's finding is supported by substantial evidence.

### iii.    The ALJ did not err in weighing Dr. Anzalone's opinion.

Grossnickle argues that the ALJ erred in affording significant weight to the opinion of State agency analyst Dr. Anzalone. *Doc*. *12* at 5-7.  Grossnickle notes that:

> Dr. Anzalone was a non-examining, non-treating expert brought on the scene by the disability determination division to offer an opinion in his matter.  Dr. Anzalone did not see Exhibits F4, F5, F6, F7, F8, F9, and F10 consisting of 442 pages of medical records.

*Id*. at 5.

Grossnickle alleges that at Exhibit 4F, I.R.G.'s treating doctor, Dr. Pope, believed that I.R.G. was eligible for Social Security benefits and indicated some of I.R.G.'s symptoms. *Id.* at 6.  Grossnickle implies that Dr. Anzalone's review of the record was incomplete because he did not see that note.  We disagree.

Grossnickle is correct that this case was filed prior to March 27, 2017, and that the old regulations apply, which essentially oblige the ALJ to consider the opinion evidence and to give weight based on several factors, but allowing deference to the opinions of a treating source. 20 C.F.R. § 404.1527.  Here, there was no opinion from the treating source.  To the extent that Grossnickle argues Dr. Anzalone's opinion is somehow deficient because he did not read Dr. Pope's statement, we disagree.  Indeed, Grossnickle offers no actual evidence as to any portion of Dr. Pope's statement which might have influenced Dr. Anzalone.

Grossnickle also indicates that Dr. Pope's letter had an accompanying

questionnaire indicating symptoms of ADHD, which included limitations in some areas that the ALJ should have considered in weighing Dr. Anzalone's opinion. *Doc. 12* at 7.  Grossnickle errs in making this argument, as the document in question states on its face that it was "completed by Sylvia Beiler, therapist". *Admin. Tr.* at 287. As Ms. Beiler was not an acceptable medical source according to the regulations under which the case was decided, the ALJ was not required to give the questionnaire any weight.

At the time that he rendered his opinion, Dr. Anzalone had a record that contained both the consultative examination of Dr. Cole and I.R.G.'s educational records, including the questionnaire completed by I.R.G.'s kindergarten teacher. *Admin. Tr.* at 93-94.  Grossnickle errs in arguing that Dr. Anzalone rendered his opinion based on an undeveloped record.

The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors outlined in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527.  An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. *Id.* The weight that the ALJ gives to a medical opinion is based on a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and the extent of the treatment relationship, the extent to which the opinion is supported by relevant

evidence, the opinion's consistency with the record as a whole, the extent to which the opinion relates to the medical source's specialty, and any other factors tending to support or contradict the opinion. *Id.* The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer*, 186 F.3d at 429.  An ALJ cannot disregard a medical opinion "based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of the claimant's credibility.'" *Morales*, 225 F.3d at 317 (internal alterations omitted) (citing *Kent*, 710 F.2d at 115).

In this instance, the ALJ found Dr. Anzalone's opinion consistent with the record as a whole both before and after the date of his opinion. *Admin. Tr.* at 32. Thus, he did articulate his findings as to the relevancy of all exhibits, including those cited by Grossnickle.

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2.  Treating sources have the closest ties to the claimant, and therefore their opinions are generally entitled to more weight. *See* 20 C.F.R. § 404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502 (defining treating source). Under some

circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§ 04.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

The implication that Dr. Anzalone's opinion should not have been given weight simply because he rendered his opinion at the onset of the case is contrary to law in this circuit.  It was not improper for the ALJ to assign Dr. Anzalone's opinion considerable weight.  State agency consultants are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims. *See* 20 C.F.R. §§ 404.1527(e), 404.1513a(b)(1); *see also Chandler*, 667 F.3d at 361-62.  Further, because State agency review precedes the ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. *See Chandler*, 667 F.3d at 361. ("[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's reliance on it.").

As noted above, the ALJ specifically considered the period in which Dr. Anzalone rendered his opinion and considered its consistency with the medical evidence which was later added to the file. *Admin. Tr.* at 32.  Accordingly, we find

that the ALJ properly relied upon Dr. Anzalone's opinion.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and the final judgment will be entered in favor of the Commissioner and against Grossnickle.  The Clerk of Court is directed to close this case.  An appropriate order follows.

*<u>S/Susan E. Schwab</u>*
Susan E. Schwab
United States Magistrate Judge
